UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STACY ZIMMERMAN, AILEEN BARAJAS, and KATHERINE SUGGS, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THIRDLOVE, INC.,<br><br>Defendant. | CASE NO. 2:26-cv-01106-JNW<br><br>REMAND ORDER |

## 1. INTRODUCTION

This matter comes before the Court on the Parties' responses to the Court's order for supplemental briefing on whether Plaintiffs Stacy Zimmerman, Aileen Barajas, and Katherine Suggs have Article III standing. Dkt. Nos. 34, 35. For the reasons stated below, the Court finds it lacks subject matter jurisdiction, DENIES ThirdLove's request for a stay, and REMANDS the case to Snohomish County Superior Court.

## 2. BACKGROUND

Plaintiffs filed this putative class action in Snohomish County Superior Court against Defendant ThirdLove Inc. Dkt. No. 1-1. ThirdLove removed this action to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332. Dkt. No. 1. Plaintiffs allege that ThirdLove violated Washington's Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA") by sending consumers marketing emails with false or misleading subject lines. Dkt. No. 1-1.

On September 10, 2026, the Court ordered supplemental briefing on two issues: first, whether Plaintiffs have Article III standing, and if so, whether the case should be stayed pending the Ninth Circuit's decision in *Montes v. SPARC Grp., LLC*, No. 23-35496; and second, whether CEMA damages are calculated per-email or per-recipient, and whether the amount in controversy satisfies the minimum for diversity or CAFA jurisdiction. Dkt. No. 32 at 2–3. Because Article III standing is a threshold issue, the Court starts there. *Hutton v. Papa John's USA Inc.*, No. C25-1922-KKE, 2026 WL 2210133, at *1 (W.D. Wash. July 31, 2026).

## 3. DISCUSSION

### 3.1 Legal standard.

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). If a plaintiff lacks Article III standing, the Court does not have

subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). The standing inquiry begins with a simple principle: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc.* (*Spokeo II*), 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins* (*Spokeo I*), 578 U.S. 330, 341 (2016) *as revised* (May 24, 2016)). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Id.* (quoting *Spokeo I*, 578 U.S. at 340). Put simply, "an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427. The key question is whether the plaintiff has identified "a close historical or common-law analogue" for the asserted injury. *Id.* at 424. Physical and monetary harms readily qualify, and so can some intangible harms, such as intrusion upon seclusion. *Id.* at 425.

"The burden of establishing removal jurisdiction, even in [CAFA] cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011). So ThirdLove, as the party invoking federal jurisdiction,

must establish "the facts necessary to support standing with the manner and degree of evidence required at the successive stages of the litigation." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). At the pleading stage, the Court looks to the allegations in the complaint. *See id.* at 1099 & n.2. If the Court determines, after removal, that it lacks subject matter jurisdiction, it must remand the case to state court. 28 U.S.C. § 1447(c). Remand, not dismissal, is the proper remedy. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

### 3.2 ThirdLove has not shown that Plaintiffs suffered a concrete injury.

ThirdLove argues that receiving unwanted commercial emails causes a concrete injury because it bears a close relationship to the traditionally recognized harms of nuisance and invasion of privacy. Dkt. No. 34 at 7 (citing *Liss v. Skechers U.S.A., Inc.*, No. 3:25-cv-05861-DGE, 2026 WL 1392327, at *3–4 (W.D. Wash. May 19, 2026); *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1006–10 (W.D. Wash. 2019). Plaintiffs agree. Plaintiffs also argue that, like the Telephone Consumer Protection Act (TCPA), CEMA establishes the substantive right to be free from certain types of communications. Dkt. No. 35 at 3.

But the Parties' positions run up against "an ever-growing list of decisions [in this District] finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." *Stutsman v. Sirius XM Radio LLC*, No. 2:25-CV-01113-LK, 2026 WL 2445129, at *4 (W.D. Wash. Aug. 20, 2026) (collecting cases). *See also Hutton*,

2026 WL 2210133, at *2 ("The Court finds that merely alleging a CEMA violation is insufficient to allege a concrete injury to [the plaintiff]."); *Aronson v. 5 Star Apparel* LLC, No. C25-2691JLR, 2026 WL 2332885, at *2 (W.D. Wash. Aug. 4, 2026) ("[E]ven if [the plaintiff] has plausibly alleged that [the defendant] violated CEMA, he cannot pursue his claim in this court because he failed to allege an Article III injury-in-fact."); *Samaduroff v. David Peyser Sportswear Inc*, No. 3:26-CV-05275-TMC, 2026 WL 2675977, at *2 (W.D. Wash. Sept. 11, 2026) ("The fact that Plaintiffs received emails allegedly in violation of CEMA does not itself constitute injury-in-fact under Article III.").

The authority cited by the Parties does not counsel otherwise. In *Harbers*, the district court found that "CEMA was enacted to protect concrete interests." 415 F. Supp. 3d at 1008 (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)). But *Harbers* was decided before *TransUnion*, and it rested on the premise that a CEMA violation is itself "the kind of concrete injury that the Washington Legislature sought to prevent." *Id*. at 1009. *TransUnion* holds that a legislature's "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." 594 U.S. at 426. As a result, the Court declines to follow *Harbers*.

Nor do Plaintiffs' alleged harms resemble those that courts traditionally redress in cases involving unwanted marketing, such as invasion of privacy, intrusion upon seclusion, and nuisance. Each of those analogues depends on contact the plaintiff did not want. *Merrick v. Premium Brands Opco LLC*, No. 2:25-cv-

02291-JNW, 2026 WL 3025764, at *2 (W.D. Wash. Oct. 8, 2026); *see Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *3 (E.D. Wash. Dec. 4, 2025). Here, Plaintiffs argue that even if they "at some point 'consented' to receive the emails," Plaintiffs did not consent "to receive *deceptive* advertising." Dkt. No. 35 at 4 (emphasis in original). Thus, Plaintiffs do not sue over unsolicited emails—she objects only to subject lines she says are false.

But the "mere 'receipt of alleged misleading or false marketing email subject lines from a solicited company,' absent any allegation of 'economic loss, detrimental reliance, or any comparable injury,' does not 'constitute a concrete harm.'" *Nuri v. True Religion Apparel*, No. 2:25-CV-00690-LK, 2026 WL 864886, at *3 (W.D. Wash. Mar. 30, 2026) (quoting *Montes*, 2025 WL 3485827, at *3). Plaintiffs do not allege that the emails cost them time or storage, were unwanted, or that they bought anything, relied on the sales, or lost money. *See Merrick*, 2026 WL 3025764, at *2–3.

In short, ThirdLove identifies no injury beyond the CEMA violation itself. Because ThirdLove has not shown that the violation caused Plaintiffs concrete harms, it has not carried its burden to establish Article III standing.

**3.3 Remand is appropriate.**

ThirdLove urges the Court to stay this case pending the Ninth Circuit's decision in *Montes*. Dkt. No. 34. But its argument is contingent upon this Court having jurisdiction, which the Court determines it does not. The allegations in the Complaint make it clear that Plaintiffs lack Article III standing so the Court need not await a ruling from the Ninth Circuit. Because the Court lacks jurisdiction, it

doesn't reach the Parties' dispute over how CEMA damages are calculated. Accordingly, the Court finds remand is the appropriate course. *See* 28 U.S.C. § 1447(c); *Polo*, 833 F.3d at 1196.

## 4. CONCLUSION

Accordingly, the Court ORDERS as follows:

1. This case is REMANDED to Snohomish County Superior Court, effective FOURTEEN (14) days from the date of this Order. *See* LCR 3(i).
2. The Clerk of Court is directed to CLOSE this case.

Dated this 9th day of November, 2026.

Jamal N. Whitehead
United States District Judge